UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>(1) NATHAN LAPARL,<br>(2) TALIA ALEXANDRE, and<br>(3) STEFANIE HIRSCH,<br><br>Defendants | Criminal No. 20cr10223<br><br>Violations:<br><br>Counts One and Two: Receipt of Kickbacks in Connection with a Federal Health Care Program<br>(42 U.S.C. § 1320a-7b; 18 U.S.C. § 2)<br><br>Count Three: Violation of the HIPAA Statute<br>(42 U.S.C. § 1320d-6; 18 U.S.C. § 2)<br><br>Forfeiture Allegation:<br>(18 U.S.C. § 982(a)(7)) |

INFORMATION

At all times relevant to this Information:

General Allegations

1.  Defendant NATHAN LAPARL ("LAPARL") was the owner of Realtime Consulting & Marketing, Inc. and Quality Rx Solutions Inc.

2.  Defendant TALIA ALEXANDRE ("ALEXANDRE") was the owner of Dax Media Solutions LLC and Luna Marketing Group Corporation.

3.  Defendant STEFANIE HIRSCH ("HIRSCH") was the owner of EI Medical, Inc., d/b/a Wheelchair & Scooter Repair ("EI Medical").

4.  Juan Camilo Perez Buitrago ("Perez") worked with LAPARL, HIRSCH and ALEXANDRE and more than two dozen shell companies,[1] including shell company US

---

[1] The companies included Alleviate Supply; Alpine Medical, Inc.; Altec Medical Supply Inc.; Armor Supply; Dermaclinical, Inc.; DermaTech, Inc.; Easy Health Braces, Inc.; E-Core Med, Inc.; Envision Bracing; Georgia Bracing Center, Inc.; Healthcore, Inc.; Integumentary Center,

Pharmacy Corp., which was incorporated in Massachusetts. The Shell Companies submitted and received payment for millions of dollars in false and fraudulent Medicare claims for durable medical equipment ("DME").

5. DME is equipment that (a) can withstand repeated use, (b) is primarily and customarily used to serve a medical purpose, (c) generally is not useful to a person in the absence of an illness or injury, and (d) is appropriate for use in the home. DME includes ankle, arm, back, knee, and shoulder braces.

6. The Medicare Program ("Medicare") is a federally-funded health care program providing benefits to individuals who are sixty-five years of age or older, or disabled. Individuals who qualify for Medicare benefits are commonly referred to as Medicare "beneficiaries." Medicare reimburses claims for prescribed, medically-necessary DME. To be reimbursable by Medicare, the DME must be prescribed to the Medicare beneficiary by a doctor or practitioner, often known as the "prescriber." To seek reimbursement from Medicare, a DME supplier must submit a claim containing, amongst other things, the (a) beneficiary's name, (b) beneficiary's address, (c) beneficiary's insurance I.D. number, (d) name of the prescriber, and (e) prescriber's address.

<u>Receipt of Kickbacks for Patient Referrals</u>

7. Between in or about January 2014 and August 2017, LAPARL, through Realtime Consulting & Marketing, Inc. and Quality Rx Solutions Inc., sold patient referrals to Perez and

---

Inc.; Lumbar Store; Medtech, Inc.; Montana Med Supply; National Prescription Corp.; Optum Telemed, Inc.; Orthatech, Inc.; Orthofit Bracing, Inc.; Patella Medical, Inc.; Posture Store, Inc.; Prohealth Braces, Inc.; Skin Relief Supply, Inc.; Spinal Med, Inc.; Tequesta Bracing; The Brace Depot, Inc.; U.S. Mobility, Inc.; US Pharmacy Corp.; US Pharmacy, Inc.; Veltar Health Care Corp.; and Vermont Skin Specialist, Inc. (collectively, the "Shell Companies").

the Shell Companies. LAPARL worked with foreign call centers, including call centers located in the Philippines. Using a script provided by Perez, the call centers working with LAPARL contacted Medicare beneficiaries and asked if they would be interested in receiving DME, such as ankle, arm, back, knee, and/or shoulder braces. The Medicare beneficiaries were often told that they would receive the DME "at little to no cost." The call centers collected the Medicare beneficiary's personal and medical data, including the (a) beneficiary's name, (b) beneficiary's address, (c) beneficiary's insurance I.D. number, (d) name of beneficiary's doctor, and (e) beneficiary's doctor's address.

8. LAPARL sold the Medicare beneficiaries' personal and medical data to Perez for a fixed fee per patient referral. In total, LAPARL received approximately $220,671 in payments from Perez for patient referrals. Perez used the personal and medical data provided by LAPARL to submit Medicare claims for DME.

9. Between in or about January 2015 and July 2019, ALEXANDRE, through Dax Media Solutions LLC and Luna Marketing Group Corporation, sold patient referrals to Perez and the Shell Companies. ALEXANDRE worked with Perez to develop a script that was provided to call centers. At ALEXANDRE's and Perez's direction, the call centers contacted Medicare beneficiaries and, using the script, asked if they would be interested in receiving DME, such as ankle, arm, back, knee, and/or shoulder braces. The Medicare beneficiaries were often told that they would receive the DME "at little to no cost." The call centers collected the Medicare beneficiary's personal and medical data, including the (a) beneficiary's name, (b) beneficiary's address, (c) beneficiary's insurance I.D. number, (d) name of beneficiary's doctor, and (e) beneficiary's doctor's address.

10. ALEXANDRE sold the Medicare beneficiaries' personal and medical data to Perez for a fixed fee per patient referral. In total, ALEXANDRE received approximately $1,469,000 in payments from Perez for patient referrals. Perez used the personal and medical data provided by ALEXANDRE to submit Medicare claims for DME.

### HIPAA Violation

11. LAPARL, his employees, and the call centers with which he worked improperly obtained Medicare beneficiaries' individually identifiable health information using a healthcare clearinghouse called MVP. HIRSCH gave LAPARL access to MVP, charging LAPARL approximately $0.25 for each patient eligibility check. HIRSCH's company, EI Medical, Inc.—unlike LAPARL's companies—was a Medicare-enrolled provider. Because of EI Medical's Medicare enrollment, EI Medical qualified for an MVP account with access to Medicare beneficiaries' individually identifiable health information. HIRSCH set up credentials for LAPARL under EI Medical's account.

12. LAPARL, his employees, and the call centers with which he worked used MVP's patient eligibility checks to obtain individually identifiable health information, including the individual's demographic information, health information, and health care payment information. In turn, LAPARL disclosed individually identifiable health information to Perez and other customers for commercial advantage and personal gain.

13. LAPARL used and caused others to use the MVP credentials that HIRSCH provided to access individually identifiable health information for more than 350,000 patients.

## COUNT ONE
Receipt of Kickbacks in Connection with a Federal Health Care Program; Aiding and Abetting
(42 U.S.C. § 1320a-7b; 18 U.S.C. § 2)

The United States Attorney alleges:

14. The United States Attorney re-alleges and incorporates by reference paragraphs 1-13 of this Information.

15. Between in or about January 2014 and August 2017, in the District of Massachusetts, and elsewhere, the defendant,

(1) NATHAN LAPARL,

did knowingly and willfully receive remuneration, directly and indirectly, in cash and kind, in return for referring an individual to a person for the furnishing and arranging for the furnishing of any item and service for which payment may be made in whole or in part by a Federal health care program, that is, the defendant sold patient referrals containing detailed personal and medical data about Medicare beneficiaries to Juan Camilo Perez Buitrago for a fixed fee.

All in violation of Title 42, United State Code, Section 1320a-7b.

## COUNT TWO
Receipt of Kickbacks in Connection with a Federal Health Care Program; Aiding and Abetting
(42 U.S.C. § 1320a-7b; 18 U.S.C. § 2)

The United States Attorney further alleges:

16. The United States Attorney re-alleges and incorporates by reference paragraphs 1-13 of this Information.

17. Between in or about January 2015 and August 2019, in the District of Massachusetts, and elsewhere, the defendant,

(2) TALIA ALEXANDRE,

did knowingly and willfully receive remuneration, directly and indirectly, in cash and kind, in return for referring an individual to a person for the furnishing and arranging for the furnishing of any item and service for which payment may be made in whole or in part by a Federal health care program, that is, the defendant sold patient referrals containing detailed personal and medical data about Medicare beneficiaries to Juan Camilo Perez Buitrago for a fixed fee.

All in violation of Title 42, United State Code, Section 1320a-7b.

## COUNT THREE
Violation of the HIPAA Statute; Aiding and Abetting
(42 U.S.C. § 1320d-6; 18 U.S.C. § 2)

The United States Attorney further alleges:

18. The United States Attorney re-alleges and incorporates by reference paragraphs 1-13 of this Information.

19. Between in or about January 2014 and July 2019, in the District of Massachusetts, and elsewhere, the defendants,

(1) NATHAN LAPARL, and

(3) STEFANIE HIRSCH,

did knowingly use and cause to be used a unique health identifier, obtain individually identifiable health information relating to an individual, and disclose individually identifiable health information to another person.

All in violation of Title 42, United States Code, Section 1320d-6.

## FORFEITURE ALLEGATION
## (18 U.S.C. § 982(a)(7))

The United States Attorney further alleges:

20. Upon conviction of the offenses in violation of Title 42, United States Code, Section 1320a-7b, set forth in Counts One and Two, the defendants,

(1) NATHAN LAPARL, and

(2) TALIA ALEXANDRE,

shall forfeit to the United States, pursuant to Title 18, United States Code, Section 982(a)(7), any property, real or personal, which constitutes or is derived, directly or indirectly, from gross proceeds traceable to the offenses. The property to be forfeited includes, but is not limited to the following:

a. $220,671, to be entered in the form of a forfeiture money judgment against LAPARL; and

b. $1,469,000, to be entered in the form of a forfeiture money judgment against ALEXANDRE.

21. If any of the property described in Paragraph 20, above, as being forfeitable pursuant to Title 18, United States Code, Section 981(a)(7), as a result of any act or omission of the defendants --

a. cannot be located upon the exercise of due diligence;

b. has been transferred or sold to, or deposited with, a third party;

c. has been placed beyond the jurisdiction of the Court;

d. has been substantially diminished in value; or

e. has been commingled with other property which cannot be divided without difficulty;

it is the intention of the United States, pursuant to Title 18, United States Code, Section 982(b), incorporating Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendants up to the value of the property described in Paragraph 1 above.

All pursuant to Title 18, United States Code, Section 982(a)(7).

ANDREW E. LELLING
UNITED STATES ATTORNEY

_____
ELYSA Q. WAN
ASSISTANT UNITED STATES ATTORNEY
DISTRICT OF MASSACHUSETTS